STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-1189


TBM-WC SABINE, LLC

VERSUS

SABINE PARISH BOARD OF REVIEW

************

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 67,678
HONORABLE STEPHEN B. BEASLEY, DISTRICT JUDGE

************
SYLVIA R. COOKS
JUDGE
************

Court composed of Sylvia R. Cooks, Billy H. Ezell, and John E. Conery, Judges.

AFFIRMED.  Ezell, J. concurs.

William R. Huguet
Kean Miller LLP
333 Texas Street, Suite 450
Shreveport, LA 71101

Phyllis D. Sims
Kean Miller LLP
400 Convention Street, Suite 700
Baton Rouge, LA 70802
Attorneys for TBM-WC Sabine, LLC: Plaintiff/Appellant

**Brian A. Eddington**
**8941 Jefferson Hwy., Suite 200**
**Baton Rouge, LA    70809**
**Attorney for Sabine Parish Assessor, Cindy Manasco: Defendant/Appellee**

**Robert D. Hoffman, Jr. APLC**
**7039 Hwy. 190—E. Service Road**
**Covington, LA  70433**
**Attorney for The Louisiana Tax Commission: Amicus Curiae**

**COOKS, Judge.**

FACTS AND PROCEDURAL HISTORY

TBM-WC Sabine, LLC (TBM) owns a natural gas pipeline and surface equipment at its Amine facility, all located within Sabine Parish, Louisiana. TBM filed a tax return, known as a rendition, with the Sabine Parish Tax Assessor's office for tax year 2015. In its rendition TBM set forth the dimensions and age of its "Toledo Bend-Wildcat system" pipeline (pipeline) which it identified as comprising "approximately 12.5 miles of 16[inch] trunkline and 19 miles of 10 [inch] trunkline." According to documents submitted by TBM, nineteen miles of ten-inch pipeline were installed in 2013 at a total cost of $6,317,880 and twelve and nine-tenths miles of sixteen-inch pipeline were installed from 2009-11, at a total cost of $6,967,071. The document further indicates that nineteen miles of this pipeline is in 96% good condition and twelve and nine-tenths miles is in 86-91% good condition. Additionally, TBM provided information that the surface equipment at its Amine facility was installed between 2002 and 2010 at a total cost of $1,426,140. TBM stated the facility was idle at the time of its tax filing but the pipeline was still in use. TBM asserted in its submission to Sabine Parish Assessor Cindy Manasco (Assessor Manasco) that the combined fair market value of the pipeline and surface equipment should ultimately be valued for 2015 tax purposes at $1,979,600 based on an 85% reduction in fair market value for obsolescence of both the pipeline and the surface items comprising its idle facility.

Applying the information provided by TBM, Assessor Manasco, using a State approved series of tax tables[1], calculated the base fair market value of the facility. This valuation is not disputed. In its rendition, TBM requested a

---

[1]     La.Admin Code, tit. 61, Pt V, §1307.

reduction in fair market value asserting obsolescence for both its surface equipment and pipeline. In an exhibit in support of this request TBM describes the pipeline's current capabilities as follows: "Gas can easily flow north and south across the system at any given time with existing access to multiple takeaway pipeline operators." In addition to this information, TBM provided Assessor Manasco an unaudited, unauthored, single-page financial statement captioned "Toledo Bend Midstream Holdings, LLC and Subsidiaries Consolidated Income Statements" covering the period of December 31, 2013 to December 31, 2014. Toledo Bend Midstream Holdings, LLC is the parent company of TBM and other subsidiaries. This one-page income statement for the parent holding company does not delineate information specific to TBM Sabine, LLC. TBM also provided a single-page document, with no supporting data, purportedly showing the utilization percentage of its Wildcat pipeline. These documents and information were the only items submitted to Assessor Manasco in support of TBM's requested 85% reduction in the assessed value of its pipeline. Assessor Manasco found the information regarding obsolescence of the pipeline insufficient to establish the requested 85% reduction for fair market valuation of the pipeline. Instead, she applied a 12% reduction for obsolescence regarding the pipeline and a 90% reduction in the assessed value of TBM's surface equipment for its facility. Assessor Manasco assessed TBM's property for the tax year 2015 in Assessment No. 2754, placing an assessed value on TBM's pipeline and surface equipment of $13,840,600 resulting in an ad valorem tax bill for TBM's Sabine Parish property of $192,500.

TBM did not protest the 90% reduction concerning its surface equipment. It did, however, appeal the 12% obsolescence reduction for the pipeline to the Sabine

2

Parish Board of Review[2] (the Board) asserting the reduction was too low for its pipeline at the Amine facility. TBM did not appear at the hearing before the Board and did not submit any additional information to the Board. The Board upheld Assessor Manasco's assessed value of the pipeline.

TBM appealed the Board's decision to the Louisiana Tax Commission (LTC). It submitted additional information and testimony at the hearing before the LTC which it did not submit to Assessor Manasco to support its request for obsolescence, though available to it at the time of filing its rendition. LTC issued a Decision and Order awarding an additional 10% obsolescence on the pipeline for a total reduction in assessed value of 22%. LTC did not articulate any factual basis for its decision nor did it find that Assessor Manasco abused her discretion. LTC made no mention of its findings regarding the ruling of the Board subject to its review. Additionally, LTC did not find that Assessor Manasco's appraisal of the fair market value of the pipeline was in any way incorrect or that it was not made in conformity with the tables promulgated by LTC.

LTC's ruling resulted in a new assessed value of TBM's property at the Amine facility placing the fair market value of the property at $12,456,540, reducing TBM's net ad valorem tax bill for 2015 to $173,000.

Assessor Manasco appealed LTC's ruling to the Eleventh Judicial District Court which reversed and vacated the LTC's ruling and reinstated the decision of the Board upholding Assessor Manasco's assessed fair market value of TBM's pipeline and her 12% reduction for obsolescence. TBM appeals the judgment of the district court alleging four assignments of error.

---

[2] The Sabine Parish Police Jury acts as the Sabine Parish Board of Review in these tax matters when a taxpayer protests assessments of its property by the parish assessor.

3

## TBM's Assignments of Error

1. In accordance with the Louisiana Administrative Procedure Act (La.R.S. 49:964(G)), the district court applied the incorrect standard of review to the LTC's decision, as it wholly failed to demonstrate that "substantial rights of the appellant have been prejudiced."

2. Similarly, under the Louisiana Administrative Procedure Act, the district court did not defer to the LTC with respect to its review of the documentary and testimonial evidence presented at the hearing, including whether the LTC's conclusions "were arbitrary or constituted an abuse of" its discretion.

3. The district court failed to recognize the Constitutional mandate of "correctness" under Article 7, Section 18(E) of the Constitution of the State of Louisiana, and erred in finding that the LTC made an "assessment," and "exceeded [its] authority" in its review and decision.

4. The district court erred in finding that the 10% obsolescence granted by the Louisiana Tax Commission was not supported by the evidence.

## ANALYSIS

Under the provisions of the La. Const. art. 7, §18(D) the parish tax assessor enjoys the exclusive right to "determine the fair market value of all property subject to taxation within [her] respective parish." This court, in *ANR Pipeline Company v. ANR Pipeline Co.*, 11-379 p. 11 (La.App. 3 Cir. 8/10/11), 73 So.3d 398, 405, specifically held:

> Parish tax assessors appraise the value of property within their parishes. It is incumbent upon taxpayers positioned to claim to [sic] a reduction of their ad valorem tax liability to prove they are entitled to that reduction . . . The determination of whether the information provided is satisfactory rests within the sound discretion of the assessor subject to review on several levels.

The Louisiana Constitution provides for *review of the correctness* of a parish tax assessor's assessment in La. Const. art. 7, §18(E): "first by the parish governing authority, then by the Louisiana Tax Commission or its successor, and finally by the courts, all in accordance with procedures established by law." The

4

Louisiana Constitution specifically designates LTC's function in this scheme as one of "review" as opposed to assessment. La. Const., art. 7, §18(E). TBM asserts "the burden of investigating and obtaining data for determination of *fair market value* [is]upon the assessor, not the taxpayer." Our courts have repeatedly rejected this assertion. This court noted in *ANR Pipeline* that La.R.S. 47:2324 provides a parish assessor "may rely on self-reporting by the taxpayer" and further noted that "our courts have long held that the party seeking obsolescence bears the burden of producing sufficient evidence to the assessor." *ANR Pipeline*, 73 So.3d at 402-04 (citations omitted). TBM faults Assessor Manasco for failing to "gather all the necessary information to determine the fair market value" of its pipeline. But, under the law including the administrative rules promulgated by LTC and settled jurisprudence, it was incumbent on TBM to provide all data and information to Assessor Manasco to support its request for adjusting the fair market value of its pipeline on the basis of obsolescence. TBM makes no showing and no assertion that the additional information it provided LTC in its effort to convince LTC to change the assessment was unavailable to it when it filed its rendition. In *Dow Chemical Company v. Pitre*, 468 So.2d 747, 754 (La.App. 1 Cir.) *writ denied* 474 So.2d 1308 (La.1985) (emphasis added) the first circuit, reversing the LTC's re-assessment of property, stated:

> The constitution provides that assessments are to be made by the assessor. It is apparent to this court that Dow was attempting to circumvent the constitutional framework by withholding information from the assessor in an effort to have the Tax Commission make the actual assessment. Apparently, Dow felt that it would be strategically advantageous to have its assessment made by the Tax Commission, due to Dow's deteriorating relationship with the assessor. However, *the Tax Commission may not usurp the constitutional authority of an assessor by utilizing factual data which was available to the taxpayer, yet withheld from the assessor.* This is not to say, however, that the Tax Commission cannot review and correct an erroneous assessment.

5

TBM did not assert in its appeal to LTC that Assessor Manasco's assessment of the fair market value of its pipeline was an erroneous assessment or that she had failed to use the proper tables or appraisal approach provided in the administrative code promulgated by the LTC. In fact, Assessor Manasco's determination of the fair market value of the pipeline was not called into question before the Board on review or before the LTC on appeal. In *Transcontinental Gas Pipeline Corporation v. Louisiana Tax Commission*, 09-1988, 09-1989, 09-1991, 09-1992, p. 22 (La. 3/16/10) 32 So.3d 199, 212-13 the supreme court explained the method of valuation used by parish assessors determining the assessed value of intrastate pipelines:

> The parish assessors use the depreciated replacement cost of the property located within their parish to determine its fair market value, utilizing guidelines promulgated by the LTC. This method looks at what it would cost to replace the assessed property new less depreciation. The record reflects that this method used by the parish assessors, replacement cost new less depreciation, is more appropriate for non rate-regulated entities.

Under the administrative rules promulgated by the LTC, parish assessors are directed as follows:

1. Pipelines, except those regulated pipelines, which are assessed as public service properties as provided by R.S. 47:1851(K), are to be assessed by parish assessors. Two separate classes of pipelines are identified because of differences in function, design and quality. The two classes are "lease lines," which are generally of lower quality, subject to changes in routes, etc.; and, "other pipelines," which are generally larger and of higher quality.

2. Both classes of pipelines are to be assessed in the taxing district where located. A copy of LAT Form 14 is to be provided the pipeline owner. Surface equipment associated with pipelines (compressor stations, booster stations, etc.) are to be reported separately on LAT Form 5. Surface pipeline related equipment is to be valued individually at cost factored to current value less physical deterioration. Pipelines are to be valued for assessment purposes at cost less physical deterioration. A cost schedule is provided for the various sizes of "other pipelines" (See Tables

6

1307.A and B). Represented in these schedules is the cost-new, as of the appropriate assessment date, for the different size pipelines. This cost is to be reduced for the appropriate allowance for physical deterioration (See Table 1307.C), based on the age of the pipeline, by multiplying replacement cost by the appropriate percent good factor . . .

TBM offers no basis to conclude that Assessor Manasco abused her discretion in arriving at a 12% reduction for obsolescence but instead, relying on additional information provided to LTC but not presented to Assessor Manasco, attempts to have the fair market value of its intrastate pipeline assessed by a method not provided for by statute or administrative rules. TBM ignores the fundamental basis for valuing intrastate pipeline, such as this one located solely within Sabine Parish, from the basis used to value interstate or public service pipelines for which a different method of valuation is used for ad valorem tax appraisals. In the valuation of public service or interstate pipelines the appraiser "looks to the value of the business itself or the going concern of the company, and not just the hard assets of the company." *Transcon.*, 32 So.3d at 212. In its effort before LTC, and now before this court, TBM attempts to use this method of valuation to assess its intrastate asset in Sabine Parish. It is an entirely different exercise to determine the fair market value of the pipe in the ground by a cost less deterioration method in accordance with the legislatively and administratively mandated method of appraisal which Assessor Manasco employed, as opposed to the method provided for intrastate pipelines which takes into account the value of the going concern applying all three general accounting methods of appraisal. As concerns the subject pipeline the administrative code now directs the parish assessor to consider the effect of economic obsolescence on the final determination of whether to reduce the assessed fair market value for obsolescence when

7

properly "*substantiated by the taxpayer in writing*." La. Admin. Code tit. 61, pt. V §1301(A)(2) (emphasis added). This court held in *ANR Pipeline* that, despite the 2009 change in the law making it mandatory to consider obsolescence when "substantiated by the taxpayer," the assessor "still retains the discretion to determine whether the taxpayer has substantiated that obsolescence." *ANR Pipeline*, 73 So.3d at 403. In its attempt to convince Assessor Manasco that she should make an adjustment to the actual fair market value for TBM's pipe in the ground based on its asserted 85% reduction for obsolescence, TBM submitted inadequate information to substantiate its request. Though TBM makes much effort to lay the lack of substantiation of its claim at Assessor Manasco's feet, the law places that responsibility squarely on TBM.

The standard of review in this case for both the district court sitting as an appellate court, and this appellate court reviewing the decision of the district court, is set forth in the Administrative Procedures Act, La.R.S. 49:964(G).[3] In *ANR*

---

[3] The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness

8

*Pipeline*, this court relied on the second circuit's reasoning in *Jones v. Southern Natural Gas Company*, 46,347, 46,348, 46,351 (La.App. 2 Cir. 4/13/11), 63 So.3d 1080, 1088, *writ not considered*, 11-1242 (La. 9/23/11), 70 So.3d 800, and *writ not considered*, 11-1242 (La. 11/4/11), 75 So.3d 911, to affirm the district court judgment reversing the LTC's ruling and reinstating the parish tax assessors' assessments. The second circuit in *Jones* set forth an appellate court's standard of review succinctly:

> On review of the district court's judgment, the court of appeal owes no deference to the factual findings or legal conclusions of the district court. *Smith v. State,* 39,368 (La.App. 2 Cir. 3/2/05), 895 So.2d 735, *writ denied,* 05–1103 La.6/17/05), 904 So.2d 701, and citations therein; *Bailey v. EnerVest*, [45,553 (La.App. 2 Cir. 6/30/10) 43 So.3d 1046].
>
> Under the Administrative Procedure Act, La. R.S. 49:964(G), the district court and court of appeal may reverse or modify the agency's determination if the substantial rights of the party seeking review have been prejudiced because the administrative findings, inferences, conclusions or decisions are (1) in violation of constitutional or statutory provisions, (2) in excess of the agency's statutory authority, (3) made upon unlawful procedure, (4) affected by other error of law, (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion, or (6) manifestly erroneous in view of the reliable, probative and substantial evidence in the record. *Smith v. State, supra; Bailey v. EnerVest, supra.*

Id. at 1088.

In this case, the district court, functioning as an appellate court, reversed the decision of LTC and reinstated Assessor Manasco's assessment finding LTC's determination "was neither supported nor sustainable by a preponderance of the evidence and exceeded the authority of the Tax Commission, which is expressly limited by the Louisiana Constitution to review and not assess." We review the

---

stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.

9

decision of the district court de novo. TBM's assignments of error focus on the district court's review of LTC's rulings and whether or not the district court employed the proper standard of review or applied the provisions of La. Const. art. 7, § 18(E) properly. But the proper focus of this court's review is to determine whether TBM has shown that Assessor Manasco abused her great discretion in finding TBM's submissions insufficient to substantiate its requested reduction in fair market value for economic obsolescence of the pipeline. In reviewing LTC's decision we must determine "whether the commission manifestly erred when it determined that [the assessor] abused [her] discretion in determining that the [taxpayer] failed to sufficiently substantiate [its] claims of economic obsolescence." *ANR Pipeline*, 73 So.3d at 403. In this regard we agree with the district court's conclusion that TBM fails to show Assessor Manasco abused her discretion in awarding a 12% reduction in fair market value rather than TBM's requested 85% reduction.

As we have previously noted, TBM accepts Assessor Manasco's discretionary determination of the base fair market value of TBM's property at its Amine facility and of its pipeline located in Sabine Parish. Indeed, this determination was made by Assessor Manasco based on data provided by TBM and applying that information to tax tables promulgated by LTC. The tax tables provide information as to the average cost per mile of pipeline and sets forth the percent good as to condition based on actual age with 26.5 years being the accepted life-span of a pipeline for valuation purposes. A review of the tables promulgated by the LTC and the information provided by TBM shows virtually the same cost per mile in a given year and shows the same percent in good condition for each year of age of the various sections of this pipeline. In valuing the surface

equipment, the parish assessor is given greater latitude and exercises more discretion in deciding whether to accept the taxpayer's figures showing depreciation or to require more information from the taxpayer and/or to look to other market information. As noted earlier, TBM had no complaint with Assessor Manasco's acceptance of TBM's depreciated value of the surface equipment of its idled Amine Plant and in exercising her discretion to accept that information as sufficient substantiation supporting her 90% reduction for obsolescence regarding that property. Despite accepting these favorable determinations based on information provided by TBM, as is its duty to provide, it now argues that although Assessor Manasco apparently exercised proper discretion when she made these decisions she somehow failed to appropriately digest the information provided to her by TBM when she concluded the information shows that TBM's pipeline has a reduced fair market value of "only" 12%, but that the information was not sufficient to substantiate the requested 85% reduction. She reached this conclusion based on her consideration of the information provided exercising her discretion after consulting other assessors. We also note that TBM does not argue in these proceedings that it has shown entitlement to its requested 85% reduction or that LTC erred in failing to reach that conclusion, asserting only that LTC properly found it is entitled to a 22% reduction for obsolescence.

LTC offered a cryptic explanation of its ruling stating only that:

> Taking into consideration the evidence presented by all parties, the Commission determined that the Taxpayer provided information to indicate additional obsolescence was in order for this property. The Commission determined an additional 10% obsolescence should be added to the 12% provided by the Assessor to include a total of 22% additional obsolescence of the Assessor's value . . .

> Applying its expertise, technical competence, specialized knowledge, and based upon the entirety of the record, the Commission

11

does hereby determine the fair market value of the subject pipeline and personal property, Assessment No. 2751, located in Sabine parish, Louisiana, to be[:]

Pipeline and Personal Property Fair Market Value $12,456,540[.]

This is a far cry from "an articulated analysis of the facts" as directed by the Louisiana Supreme Court in *Miller v. LAMMICO*, 07-1352, p. 28 (La. 1/16/08), 973 So.2d 693, 711. LTC offered no explanation of how it arrived at its conclusion and seems to be substituting its' discretion for the parish assessors' which it is not constitutionally empowered to do. LTC does not say how Assessor Manasco abused her discretion in allowing a 12% reduction or for that matter that it found such an abuse of discretion. LTC does not enjoy the Parish Tax Assessor's exclusive, constitutionally mandated discretion in making assessments of taxpayer's property. As we have previously stated, its function is limited to one of review rather than assessment. La. Const. art. 7, §18(E). *See also Bailey*, 43 So.3d at 1056. The Parish Tax Assessor's assessment is presumed valid unless the taxpayer proves otherwise. *Gisclair v. La. Tax Commn.*, 09-7, 09-8 (La. 6/26/09), 16 So.3d 1132. We also note that, despite the fact that TBM took no issue with Assessor Manasco's determination of the base fair market value of its property and took no issue with her reduction for obsolescence of 90% for the surface equipment at TBM's Amine facility, LTC says it "determin[ed]" the fair market value of the pipeline and the "personal property" of TBM located in Sabine Parish. The only issues before LTC were the correctness of the Board of Review's ruling upholding Assessor Manasco's 12% reduction for obsolescence of the pipeline and whether Assessor Manasco abused her discretion. Neither the fair market value of TBM's property and pipeline or the 90% reduction for obsolescence of its surface

12

property was before the LTC. TBM has never objected to those determinations. Based on our review of the record we cannot say Assessor Manasco abused her discretion in finding TBM's submissions supported only a 12% reduction in fair market value based on obsolescence. TBM complains that Assessor Manasco offers no basis for arriving at a 12% reduction, but the record does not support a finding that Assessor Manasco abused her discretion in allowing such a reduction.

We find TBM failed to substantiate its asserted 85% reduction in fair market value for its intrastate pipeline in Sabine Parish. We also find TBM fails to show Assessor Manasco abused her discretion when she determined that TBM's submissions did not adequately substantiate its' requested reduction for obsolescence. Our review of the record supports the district court's ruling and for the reasons stated we affirm the district court judgment. All costs of this appeal are assessed against TBM-WC Sabine, LLC.

**AFFIRMED.**